```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
RICHARD HARGETT,

                          Petitioner,            MEMORANDUM & ORDER

            -against-                            03-CV-6391 (CBA)

MICHAEL GIAMBRUNO,
Superintendent,

                          Respondent.
-----------------------------------------------------------X
AMON, UNITED STATES DISTRICT JUDGE:
```

INTRODUCTION

Richard Hargett brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner claims that the trial court's decision to partially close the courtroom during a portion of his trial denied him his Sixth Amendment right to a public trial. For the reasons set forth below, this argument is without merit and the petition is denied.

BACKGROUND

I.     The Evidence at Trial

The evidence at trial established that on February 12, 1998, petitioner Richard Hargett sold crack cocaine to Undercover Officer 1176 near the intersection of 177th Street and 106th Avenue in Queens. The undercover officer approached petitioner's co-defendant, Joy McFarlane, and inquired if she knew where he could purchase drugs. McFarlane took the undercover officer to the basement of a nearby house, where the officer exchanged twenty dollars in pre-recorded buy money for two bags of crack cocaine from petitioner. After leaving

1

the premises, the undercover officer transmitted descriptions of McFarlane and petitioner to other members of his team. Detective John Quinn knocked on the door of the basement and took hold of petitioner when he answered the door. A subsequent search of petitioner's pants pockets produced two glass tubes containing cocaine residue. The undercover officer then identified petitioner via radio communication, and Detective Quinn arrested him.

On January 24, 2000, the court held a <u>Hinton</u>[1] hearing to determine whether the courtroom should be closed during the undercover officer's trial testimony. The officer testified that he had worked as an undercover for approximately three years, and that at the time, he was assigned to the Southeast Queens Initiative. (Trial Tr. at 6.) He testified that he worked in the arrest area on a weekly basis, that he had other investigations pending in that area, that he had approximately three lost subjects[2] there, and that he would be returning to the area following petitioner's trial. (<u>Id.</u> at 7-10.) The officer further stated that he had never testified in open court, that he always entered the courthouse through a rear entrance, that he waits at the District Attorney's office until he is called to testify, that he never wore his uniform in court, and that he had previously encountered suspects or targets of his investigations around the courthouse. (<u>Id.</u> at 10-13.) He testified that he had been threatened approximately a dozen times in the course of his undercover work by individuals who said they would kill him or have him killed if they later discovered that he was a police officer. (<u>Id.</u> at 11.) Although he did not know petitioner's

---

[1] A <u>Hinton</u> hearing is a proceeding to determine the appropriateness of excluding the public during trial testimony. <u>See</u> <u>People v. Hinton</u>, 31 N.Y.2d 71 (N.Y. 1972) <u>cert. denied</u>, 410 U.S. 911 (1973).

[2] A lost subject is an individual who was the subject of an undercover investigation but who was not apprehended and is still being sought by police. (Trial Tr. at 9-10.)

family, the officer testified that the family still lived in the area where he worked and that he was concerned that, if he were to testify in open court, he might later encounter petitioner's family or friends and that they could reveal his identity as an undercover officer, thereby compromising his safety, the safety of his team, and the team's capacity to work in the area. (Id. at 9, 14-16.) Whenever the officer has been recognized as an undercover in the past, the operation has had to be shut down and the team has had to leave the area. (Id. at 12.)

Based on the foregoing evidence, the court ordered a limited closure of the courtroom during the undercover officer's testimony. Despite the officer's concerns about petitioner's family, the court allowed certain family members named by petitioner to remain in the courtroom, noting that there was no specific information indicating that those family members were a legitimate threat to the officer. The court also allowed "any attorney or member of the bar" to remain in the courtroom during the officer's testimony and *sua sponte* stationed an officer outside the courtroom to allow members of the public to petition for entry on a case by case basis. (Id. at 49-50.) During the trial, the prosecution asked the court to reconsider its ruling with regard to the named family members and introduced two rap sheets indicating that petitioner's father and brother had resided at the same address as the named family members and that both had been involved in drug-related criminal activities during that time. Based on this new evidence, the court modified its initial ruling and ordered that a blackboard be placed in front of petitioner's family members to block their view of the undercover officer during his testimony. (Id. at 376-379.)

After a jury trial, petitioner was convicted on March 3, 2000 in the Supreme Court, Queens County of criminal sale of a controlled substance in the third degree. N.Y. Penal Law § 220.39[1]. The court sentenced petitioner as a second felony offender to a prison term of seven to fourteen years.

II.     Subsequent Procedural History

Petitioner appealed his conviction to the New York Supreme Court, Appellate Division, Second Department. On appeal, he claimed that the trial court's decision to close the courtroom denied him his Sixth Amendment right to a public trial. The Appellate Division affirmed the conviction on April 29, 2002. People v. Hargett, 742 N.Y.S.2d 638 (N.Y. App. Div. 2002). Petitioner thereafter sought permission to appeal to the New York Court of Appeals, but permission was denied on September 23, 2002. People v. Hargett, 749 N.Y.S.2d 480 (N.Y. 2002). He filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on December 22, 2003.

DISCUSSION

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a . . . public trial." U.S. Const. amend VI. This right is not, however, absolute, and in some circumstances it may give way to overriding interests. Waller v. Georgia, 467 U.S. 39, 45 (1984). "In Waller v. Georgia, the Supreme Court identified four prerequisites to excluding the public from a courtroom during certain criminal proceedings: (1) the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced,

4

(2) the closure must be no broader than necessary to protect that interest, (3) the trial court must consider reasonable alternatives to closing the proceeding, and (4) it must make findings adequate to support the closure." U.S. v. Abuhamra, 389 F.3d 309, 329 (2d Cir. 2004) (quoting Waller, 467 U.S. at 48 (internal quotation marks omitted)). Prior to the 1996 enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Waller was generally understood "to impose specific requirements on trial courts in order to justify courtroom closures during the testimony of undercover police officers." Brown v. Artuz, 283 F.3d 492, 499 (2d Cir. 2002). However, since enactment of the AEDPA, federal courts "are now constrained to apply Waller under a more deferential standard, which only permits a writ of habeas corpus to issue if the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Id. at 500 (quoting 28 U.S.C. § 2254(d)(1)).

Under the AEDPA, this Court must first determine whether the principle of federal law upon which the petitioner relies was "clearly established" by Supreme Court precedent when the state court decided to close the courtroom. Artuz, 283 F.3d at 500. Because the Supreme Court recognized in Waller that, subject to certain limitations, the right to a public trial is clearly established federal law, the state court's decision to close the courtroom "will stand unless it was 'contrary to' or involved an 'unreasonable application' of the federal constitutional law clearly established in Waller." Id. (citing Waller, 467 U.S. at 44). Petitioner argues that the state court unreasonably applied Waller to the facts of this case. (Petitioner's Mem. at 14.) "A decision is an 'unreasonable application' of clearly established Supreme Court law if a state court 'identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably

5

applies that principle to the facts of [a] prisoner's case.'" Williams v. Taylor, 529 U.S. 362, 413 (2000). Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. In order to grant the writ, "[s]ome increment of incorrectness beyond error is required . . . however, that . . . increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (citation and internal quotation omitted). A review of the record reveals that the state court did not unreasonably apply Waller to the facts of this case.[3]

1. Overriding Interest Likely to Be Prejudiced

As to the first prong, the government has an overriding interest in assuring the safety of its undercover agent and maintaining that agent's effectiveness by not having his identity revealed. Cadilla v. Johnson, 119 F.Supp.2d 366, 377 (S.D.N.Y. 2000) (citing Brown v. Kuhlmann, 142 F.3d 529, 538 (2d Cir. 1998) and Ayala v. Speckard, 131 F.3d 62, 72 (2d Cir. 1997)); see also Sevencan v. Herbert, 342 F.3d 69, 76 (2d Cir. 2003) (as amended); Nieblas v. Smith, 204 F.3d 29, 33 (2d Cir. 1999). Although "an officer's undercover status will not in itself support closure of the courtroom during his testimony," Kuhlmann, 142 F.3d at 538, the first Waller requirement is met when the state presents persuasive evidence of serious risk to at least one of these interests. Cadilla, 119 F.Supp.2d at 377. In this case, although the prosecution

---

[3] The state court grounded its ruling in New York state case law, including at least one case that applied Waller. (See Trial Tr. at 43-49; People v. Nieves, 90 N.Y.2d 426 (N.Y. 1997)).

6

proffered evidence supporting both interests, the request for courtroom closure and the trial court's findings were framed in terms of the undercover officer's safety. (See Trial Tr. at 43-49.) When seeking to close a courtroom on this basis, "the state must demonstrate a specific connection between the perceived threat to the officer and the officer's public testimony in the particular proceeding.." Cadilla, 119 F.Supp.2d at 377. "This particular requirement is met if the state credibly asserts: (1) a reasonable relationship between the danger to the officer and the presence in court of associates of the defendant; (2) a plausible fear, in view of the existence of other pending proceedings concerning parties with whom the officer is also involved as an undercover agent, so long as those proceedings are in the same courthouse; or (3) a specific threat to the officer that would be aided by the officer's open testimony." Id.

In this case, the evidence proffered by the prosecution amply supports the trial court's limited closure of the courtroom as necessary to protect the physical safety of the undercover officer. At the Hinton hearing, the undercover officer testified that he had been told approximately a dozen times in the course of his undercover work that he would be killed if his identity as a police officer were discovered, that he would be returning to the area of the arrest to continue his undercover work after the trial, and that petitioner's family lived "right around the corner" from the arrest area and could identify him to others as a police officer. He further stated that he always took precautions to conceal his identity when appearing to testify in court and that he had previously encountered suspects of his investigations around the courthouse. In making his initial ruling ordering limited courtroom closure, the trial judge cited many of these factors as evidence that the undercover officer "had a real viable concern for his continued safety if he were forced to testify in an open courtroom." (Trial Tr. at 46.) The trial court's subsequent

decision to install a blackboard to block petitioner's family members from view was based on the prosecution's submission of additional evidence, namely "lengthy criminal histories" that linked petitioner's father and brother to drug-related activity and established that, during a period of ongoing criminal activity, those individuals resided at the same address as the family members in question, that address being within one block of defendant's arrest. (Trial Tr. at 376-78.) In the trial court's view, this supplemental evidence was sufficient to raise the spectre of danger to the officer were he forced to testify in open court. (Id. at 377-78.) Because the record amply supports the trial court's finding that limited courtroom closure was warranted to protect the officer's safety, the Court need not decide whether concerns about the officer's continued effectiveness also justified the closure.[4] See Ayala, 131 F.3d at 72.

2. Closure No Broader than Necessary

The Court notes as an initial matter that the closure in this case was narrow inasmuch as it applied only during the testimony of one witness, the undercover officer, and insofar as the public was not fully excluded, but rather was allowed to petition for entry on a case by case basis. See Bowden v. Keane, 237 F.3d 125, 130 (2d Cir. 2001); Kuhlmann, 142 F.3d at 538. The one issue that merits discussion is the treatment of petitioner's family.

---

[4] When seeking to close a courtroom to protect the effectiveness of an undercover officer, "the state may satisfy its burden by demonstrating that the undercover officer would return to an area of operation where the defendant had been arrested or where the trial audience might reside, so long as that area is defined with geographic particularity." McCarthy v. Portuondo, 2001 WL 826702, *6 (E.D.N.Y. May 25, 2001); see also Cadilla, 119 F.Supp.2d at 377. In addition to the foregoing facts concerning the officer's ongoing work in the arrest area, the officer testified that the undercover operation in the arrest area would have to be shut down completely if he were identified as a police officer.

The Second Circuit has held, with regard to the second prong of the Waller test, that "Waller prevents a court from denying a family member's request to be exempted from a courtroom closure order unless the court is convinced that the exclusion of that particular relative is necessary to protect the overriding interest at stake." Yung v. Walker, 341 F.3d 104, 111 (2d Cir. 2003) (as amended). In his initial ruling, the trial judge allowed specific family members named by petitioner to remain in the courtroom during the undercover officer's testimony because, he said, "I don't have anything specific to make me feel that they are a real and bona fide threat." (Trial Tr. at 51.) It was not until further evidence was introduced establishing a threat posed by petitioner's family members that the judge modified his ruling, ordering that the family members be seated behind a blackboard during the officer's testimony. The trial judge specifically stated that "the Court feels that the information about the brother and the father is sufficient for the Court now to permit there to be such a screen." (Id. at 378.) The judge cited "a concern that these family members can walk, the brother or the father, who has felony drug convictions, around the neighborhood where they still live and point out the undercover, who is still working there many times a week." (Id. at 382.) Under these circumstances, the trial judge reasonably concluded that petitioner's family members posed a legitimate threat to the safety of the undercover officer and that blocking the family members' view of the officer was necessary to protect the overriding interest in the officer's safety. See Sevencan, 342 F.3d at 76; Yung, 341 F.3d at 111.

The method selected by the trial judge to address the threat posed by petitioner's family members satisfies the second Waller requirement that the closure be "no broader than necessary." See Waller, 467 U.S. at 48. As discussed, the trial judge did not completely exclude

9

petitioner's family members from the courtroom; rather, he allowed them to remain seated behind a blackboard where they could hear the undercover officer's testimony firsthand but were shielded from view. At least one court has concluded that the same limited closure measure "did not interfere with petitioner's right [to have family and friends present at trial.]" McCarthy v. Portunondo, 2001 WL 826702, at *8 (E.D.N.Y. May 25, 2001), aff'd, No. 01-2379, 62 Fed.Appx. 17 (2d. Cir. 2003) (unpublished).

   3.  Consideration of Reasonable Alternatives to Closure

The third Waller requirement, that the trial court consider reasonable alternatives to complete closure, is clearly met in this case. As discussed, the fact that the trial court closed the courtroom only during the testimony of the undercover officer in and of itself constitutes a narrower alternative than complete closure. See Ayala, 131 F.3d at 71; Cadilla 119 F.Supp.2d at 378. The court also *sua sponte* stationed an officer outside the courtroom to allow members of the public to petition for entry on a case by case basis. And, at petitioner's request, the court allowed any lawyers and petitioner's family members to remain in the courtroom during the undercover officer's testimony. See Sevencan, 342 F.3d at 76 (finding the admission of other lawyers and legal interns at the request of the defense a reasonable alternative to complete closure under Waller). Petitioner argues that the use of the blackboard cannot be considered a reasonable alternative to closure within the meaning of Waller due to its potentially prejudicial effect on the jury; however, the trial judge specifically addressed the issue of prejudice, stating that any potentially prejudicial effect was purely speculative, and ordered that the blackboard be left in place for the duration of the trial to minimize any such effect. (Id. at 379-81.) Finally,

10

petitioner does not proffer that he suggested other reasonable alternatives that were rejected by the court. As such, this Court concludes that the third <u>Waller</u> requirement was met in this case.

    4.    <u>Findings Adequate to Support Closure</u>

Finally, there can be little dispute that the fourth requirement of <u>Waller</u> was satisfied. Before reaching the decision to close the courtroom, the trial judge held a <u>Hinton</u> hearing to determine the appropriateness of the state's request. See <u>Kuhlmann</u>, 142 F.3d at 538 ("Before deciding to close the courtroom, the trial judge held a hearing at which he took testimony and allowed each party to present argument."). He clearly delineated his findings on the record when making both his initial and subsequent rulings. And far from the "[b]road and general findings" the Second Circuit has found "insufficient" to support a trial court's decision to close the courtroom, <u>English v. Artuz</u>, 164 F.3d 105, 109 (2d Cir. 1998); <u>see also</u> <u>Cadilla</u>, 119 F.Supp.2d at 379, the trial judge in this case made specific findings regarding the reasons for the closure. Indeed, when making his initial ruling ordering limited courtroom closure, the trial judge cited many of those factors (Trial Tr. at 43-49), noting that the "findings are very clear-cut" that the undercover officer's safety would have been jeopardized if he testified in open court.[5] (<u>Id.</u> at 46.) And when modifying his closure order to include the use of a blackboard, the judge specifically found that the new evidence linking petitioner's family members to drug-related activity was "sufficient to raise the spectre of a dangerous situation for the undercover should the Court

---

[5] To the extent that the trial judge did not explicitly base his decision on the effectiveness factor, another available basis for closure in this case, information gleaned from the record, including facts adduced at the <u>Hinton</u> hearing, clearly satisfies the fact-finding requirement on this point. See <u>Woods v. Kuhlmann</u>, 977 F.2d 74, 77-78 (1992); <u>Bowden v. Keane</u>, 85 F.Supp.2d 246, 251 (S.D.N.Y. 2000).

11

ignore this additional information . . . " (Id. at 377-78.) Accordingly, the judge's pre-closure fact finding was clearly adequate to support the limited closure ordered in this case.[6] See Sevencan, 342 F.3d at 76 ("trial court made 'findings adequate to support the closure,' in that it found that the undercover officer would indeed be in danger if he were publicly identified").

## CONCLUSION

For the foregoing reasons, the trial court's decision to partially close the courtroom during a portion of petitioner's trial was not an unreasonable application of clearly established Supreme Court law. Accordingly, petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied. A certificate of appealability will not issue because petitioner has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253 (c)(2). The Clerk of the Court is directed to enter judgment in accordance with this Order and to close the case.

SO ORDERED.

DATED:   April 26, 2005
         Brooklyn, New York

                                        Carol Bagley Amon
                                        United States District Judge

---

[6] Although the findings of the trial judge satisfy the fourth Waller requirement without the need to relax applicable standards, the Court notes that "the scrutiny given the findings is correspondingly less" when the closure is limited, as opposed to complete. Cadilla, 119 F.Supp.2d at 378 (citing Kuhlmann, 142 F.3d at 538 ("While the reasons [the trial judge] gave for concluding that [an officer's fear for his safety] was objectively reasonable were neither entirely accurate nor particularly compelling, the strength of the judge's findings must be evaluated by reference to the very limited scope of the closure they support; by that standard, the trial court's findings were adequate.")).

12